**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: July 13, 2023

S23Y0869. IN THE MATTER OF KEITH CHANCE HARDY.

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation of the special master, Delia Tedder Crouch, who recommends that Respondent Keith Chance Hardy (State Bar No. 538509), who was admitted to the State Bar in 2014, be disbarred for his admitted violations of Rules 1.1; 1.2 (a); 1.3; 1.4; 1.5 (a) and (c); 1.15 (I) (a), (b), and (c); 1.16 (b) and (d); 8.4 (a) (4); and 9.3 of the Georgia Rules of Professional Conduct ("GRPC") in connection with three client matters.[1] Given the facts of the underlying matters, we agree with the special master that disbarment is appropriate.

---

[1] The maximum penalty for a single violation of Rules 1.1, 1.2, 1.3, 1.15 (I), and 8.4 (a) (4) is disbarment, and the maximum penalty for a single violation of Rules 1.4, 1.5, 1.16, and 9.3 is a public reprimand.

The record shows that the State Bar filed the formal complaint on September 23, 2022, and had it personally served on Hardy on November 20, 2022. Hardy failed to file an answer or request an extension of time within 30 days. So, in January 2023, the Bar filed a motion seeking to find Hardy in default. Hardy failed to respond to the motion, and in March 2023, the special master issued her report and recommendation, finding that, because Hardy was in default, the facts alleged and violations charged in the formal complaint were deemed admitted. See Bar Rule 4-212 (a). The special master then summarized the facts of each of the three client matters as follows.

With regard to State Disciplinary Board Docket ("SDBD") No. 7622, the record shows that Hardy admitted that in 2020 a client paid him $1,500 for representation in a case in which the client had been charged with a criminal misdemeanor, and Hardy told the client that he would waive arraignment without the client needing to appear. The arraignment was rescheduled multiple times, but Hardy failed to inform the client about the progress of the case or to

2

respond to the client's repeated inquiries as to the status of, or upcoming hearings in, the case. At the arraignment, Hardy failed to appear or advise the client that he needed to appear, and, as a result, the court forfeited the client's bond and issued a bench warrant for the client's arrest. Afterwards, the client emailed Hardy, terminating the representation and demanding the return of his client file and a full refund. Hardy did not respond, and, on October 4, 2021, the client filed a grievance with the Bar. Hardy never responded to the grievance or to the Bar's Notice of Investigation despite being given multiple opportunities to do so by the Bar.

With regard to SDBD No. 7623, the record shows that Hardy was appointed as a "conflict defender" to represent a client who was charged with murder, tampering with evidence, and other charges. On or about September 5, 2019, Hardy had his first meeting with the client and told her that he believed he could get a bond on her charges, but that she would need money to pay the bondsman. When the client advised that she had some money but did not know how to access it from jail, Hardy offered to access the client's bank

3

account for her. The client provided Hardy with the information necessary to access her bank account after Hardy allowed her to use his computer to digitally transfer $21,600 from her savings account to her checking account. The court did not immediately grant bond, but Hardy began taking money out of the client's account and, by December 10, 2019, Hardy had initiated six withdrawals or transfers from his client's account, taking a total of $20,000 and incurring $120 in wire transfer fees. In addition, the client had specifically authorized Hardy to receive the property she had in her possession when she was arrested, which included approximately $3,500 worth of jewelry. Although the client directed Hardy to turn the jewelry and other items over to her family, he instead kept the jewelry and other items. Hardy entered an appearance in the client's matter and filed a motion for bond, but he failed to take any other action on the client's behalf, and never filed a motion asking to withdraw from the representation. The client's family hired a new lawyer to assist the client in cooperating with the State. New counsel was able to get the client a bond, which she was only able to

post with the help of her family because Hardy had depleted her savings. The client reported Hardy's thefts to the State Bar, but she was fearful to report them to the local police and district attorney because of Hardy's connections to local law enforcement and because the local district attorney was still prosecuting her. Hardy has made no attempt to refund the stolen funds to the client,[2] who ultimately filed a grievance with the Bar in November 2021. Hardy did not respond to the grievance or to the Bar's subsequent Notice of Investigation.

With regard to SDBD No. 7624, the record shows that a client hired Hardy to represent her in a suit to recover for injuries she suffered in an automobile accident on August 24, 2017. Over the next two years, Hardy failed to adequately communicate with her

---

[2] This disciplinary matter presents a number of professional conduct violations that may also amount to violations of various criminal statutes, particularly with respect to SDBD No. 7623. We note that the State Disciplinary Board's Internal Rules of Conduct and Procedure provide guidance in cases such as this. Rule 13 states: "If the charge against a respondent lawyer amounts to a possible violation of a criminal statute, the State Disciplinary Board may direct the office of the General Counsel to refer the matter to the appropriate authority for criminal prosecution[.]"

about the status of her case and also failed to communicate with her medical providers. In July 2019, the client reached out to Hardy's brother, who is also an attorney, to check on Hardy since she had been unable to contact him. Hardy's brother told the client that Hardy was okay and that he would contact her soon, but Hardy did not contact her until September 2019 to advise her that he was still working on her case. The client heard nothing more about her case until November 4, 2019, when she received a letter from an insurance company informing her that the case had been settled on October 10, 2019. The client immediately tried to contact Hardy, who responded the following day, telling her (falsely) that the insurance company had only provided a "proposed release draft and dismissal" and advising her that, if she was willing to accept between $7,000 and $10,000 for her case, she could have a check in days. The client then contacted the insurance company herself and learned that Hardy had already received and negotiated a check, which had been made payable to both her and Hardy, for a total settlement of $15,000. The client did not authorize Hardy to sign her

6

name or to otherwise negotiate the check. The client continued trying to contact Hardy, sending an email threatening to have the check tracked and investigated for forgery and to contact the district attorney's office about Hardy negotiating the check and retaining the proceeds. The client copied Hardy's brother on the email and Hardy finally responded, denying any wrongdoing but offering to take no attorney fees from the settlement. Hardy itemized the proposed payout of the settlement, listing amounts owed to three medical providers (although one of those providers already had been paid by the client and her insurance company) and advising that he would retain the amounts necessary to pay those bills ($3,405.50). By his default, Hardy admitted that his brother acted as a "go-between" and actually met with Hardy's client to finalize the settlement and deliver the settlement check. The client never heard from Hardy or his brother again, but she did hear from two medical providers, informing her that no amount had been paid on her behalf. One of the providers put her debt into collection and the other threatened to do so before agreeing to settle the debt for $600,

7

which the client paid out of her own pocket. In November 2021, the client filed a grievance with the Bar, but Hardy never responded to it nor to the Bar's resulting Notice of Investigation.

After neither party requested review by the Review Board, on April 24, 2023, the State Bar filed the report and the underlying record with this Court. See Bar Rule 4-214 (c). Hardy, who is suspended by this Court pursuant to Bar Rule 4-204.3 (d) (2) for his failure to adequately respond to the Notice of Investigation related to a fourth grievance, which appears to be unrelated to this case, see Case No. S22Y1030 (May 20, 2022), has not filed any exceptions to the special master's report and recommendation, and the time for him to do so has expired. See Bar Rule 4-218.

Based on these admitted facts, the special master found that Hardy violated Rule 1.1[3] in all three client matters because he failed to demonstrate the thoroughness and preparation reasonably necessary for the representations and failed to demonstrate that he

---

[3] Rule 1.1 requires a lawyer to provide competent representation to a client and provides that "[c]ompetence requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

8

had given the required amount of attention to any of the three matters. The special master further found that Hardy violated Rule 1.2 (a)[4] in all three client matters by failing to abide by any of the clients' decisions concerning the scope and objectives of their representations or to even consult with them as to the means by which their objectives were to be pursued. Moreover, in the case of SDBD No. 7624, Hardy further violated Rule 1.2 (a) by settling the case and negotiating the settlement check when he lacked the authority to do so.

The special master found that Hardy violated Rule 1.3[5] in SDBD No. 7622 by willfully and without just cause disregarding the client's matter to the client's detriment, in that the court issued a

---

[4] Rule 1.2 (a) provides, in relevant part, that "[a] lawyer shall abide by a client's decisions concerning the scope and objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation."

[5] Rule 1.3 provides, in relevant part, that "[a] lawyer shall act with reasonable diligence and promptness in representing a client" and defines reasonable diligence to mean "that a lawyer shall not without just cause to the detriment of the client in effect willfully abandon or willfully disregard a legal matter entrusted to the lawyer."

bench warrant and ordered a bond forfeiture for the client's failure to appear. In SDBD No. 7623, he willfully and without just cause disregarded and abandoned the client's matter to her detriment because due to his failures the client was incarcerated without bond. And, in SDBD No. 7624, he willfully and without just cause disregarded the client's matter for approximately two years, refused to communicate with her about the status of her case until she called his brother, and then abandoned the client's matter by failing to pay the outstanding obligations due to her medical providers, which he promised to do.

The special master found that Hardy violated Rule 1.4[6] in SDBD No. 7622 because he failed to adequately communicate with, or provide updates to, the client or to notify him of his upcoming court dates. He violated Rule 1.4 in SDBD No. 7623 when he failed

---

[6] Rule 1.4 (a) requires a lawyer to promptly inform the client of any decision or circumstance with respect to which the client's informed consent is required by these rules; reasonably consult with the client about the means by which the client's objectives are to be accomplished; keep the client reasonably informed about the status of the matter; and promptly comply with reasonable requests for information.

to adequately communicate with, or provide updates to, his client or her family; withheld information from his client and her family about his theft of her funds; and cut off all communications with the client and her family after his theft of her funds. The special master found that Hardy violated Rule 1.4 in SDBD No. 7624 because of the approximately two-year lapse of communications between him and his client; because Hardy refused to communicate directly with the client and forced her to use his brother as a "go-between"; and because he cut off communications with his client at a time when he still had responsibility to satisfy her medical bills from the money he withheld from her settlement proceeds. The special master found that Hardy violated Rule 1.5[7] in SDBD No. 7622 when he collected and retained $1,500 from the client without performing any services at all; in SDBD No. 7623, when he collected and retained money from the client whom he had been appointed to represent; and, in

---

[7] Rule 1.5 prohibits a lawyer from making an agreement for, charging, or collecting an unreasonable fee.

SDBD No. 7624,[8] when he collected and retained funds he told the client that he had withheld to pay her medical expenses.

With regard to the trust accounting rules, the special master found that Hardy violated Rule 1.15 (I) (a)[9] in that he received money from the account of the client in SDBD No. 7623 and failed to keep it separate from his own property in one or more separate IOLTA accounts; received that client's jewelry and other personal property in connection with his representation of her but failed to safeguard it; and received property in which the client in SDBD No. 7624 had an interest—that is, the proceeds of her settlement—in connection with his representation of her and failed to keep it

---

[8] The special master further noted that in SDBD No. 7624 Hardy violated Rule 1.5 (c), which requires that at the conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement showing the remittance to the client and the method of its determination, inasmuch as he failed to provide a complete Rule 1.5 (c) (2) statement of remittance to the client at the conclusion of her matter.

[9] Rule 1.15 (I) (a) provides that a "lawyer shall hold funds or other property of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own funds or other property"; that "[f]unds shall be kept in one or more separate accounts maintained in an approved institution"; and that "[o]ther property shall be identified as such and appropriately safeguarded."

12

separate from his own property in one or more separate IOLTA accounts. According to the special master, Hardy violated Rule 1.15 (I) (b)[10] in SDBD No. 7624 because he disregarded the interests that the medical providers for the client had in their expected payment for treating the client's injuries. Hardy violated Rule 1.15 (I) (c)[11] in SDBD No. 7624 by failing to promptly notify the client or her medical providers of his receipt of the settlement funds in which they had an interest and to promptly deliver to them the funds to which they were entitled.

---

[10] Rule 1.15 (I) (b) provides, in relevant part, that a "lawyer may not disregard a third person's interest in funds or other property in the lawyer's possession" if the interest is known to him and based upon a statutory lien or a written agreement by the client guaranteeing payment out of those funds or property.

[11] Rule 1.15 (I) (c) provides that "[u]pon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person . . . . [and] promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive."

The special master found that Hardy violated Rule 1.16 (b)[12] in SDBD No. 7622 because he failed to withdraw from the client's case before the client's interests were adversely affected. Hardy also violated Rule 1.16 (d)[13] in that case because he terminated his representation of the client without giving him reasonable notice or taking the steps reasonably practicable to protect his interests, without returning unearned attorney's fees, and without returning the client's file upon request.

As for Rule 8.4 (a) (4),[14] the special master found that Hardy knowingly violated the rule in SDBD No. 7622 because his retention of that client's $1,500 amounted to a dishonest and unlawful

---

[12] Rule 1.16 (b) states, in relevant part, that a "lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client."

[13] Rule 1.16 (d) provides that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned."

[14] Rule 8.4 (a) (4) makes it a violation of the GRPC for an attorney to "engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation."

14

conversion of those funds. The special master found that Hardy violated the same rule in SDBD No. 7623 because his taking of more than $20,000 from that client's bank account under the circumstances described herein amounted to dishonesty, deceit, identity fraud, and conversion. He also violated this rule through his conversion of her jewelry and other personal items, which amounts to a dishonest and deceitful theft. As to SDBD No. 7624, the special master found that Hardy violated Rule 8.4 (a) (4) because he engaged in deceitful conduct by settling that client's matter without her knowledge or authorization; by lying to her in a November 2019 email about the nature of his negotiations with the insurance company; by falsely telling her that she owed one of her medical providers $500 when that amount had been satisfied through her insurance; by forging her signature on the settlement check in order to deposit it without her authorization; and by converting to his own use the amounts he told her he had withheld to pay her remaining medical providers. Finally, the special master found that Hardy

15

violated Rule 9.3[15] by failing to respond to the Notices of Investigation related to each of the underlying grievances.

In determining the appropriate level of discipline, the special master considered the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards"). See *In the Matter of Morse*, 266 Ga. 652 (470 SE2d 232) (1996) (ABA Standards are instructive in determining the appropriate level of discipline). Those standards require consideration of (1) the duty violated; (2) the lawyer's mental state; (3) the potential or actual injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors. See ABA Standard 3.0. By finding that Hardy's actions in these cases implicated ABA Standards 4.11, 4.41, 4.51, 4.61, 5.11 and 7.1, the special master concluded that, among other violations, Hardy abandoned client matters and ignored client communications; caused serious injury to a client; displayed a lack of preparedness demonstrating a lack of competence; deceived his

---

[15] Rule 9.3 provides that "[d]uring the investigation of a matter pursuant to these Rules, the lawyer complained against shall respond to disciplinary authorities in accordance with State Bar Rules."

16

clients; and engaged in intentional interference with the administration of justice, including theft, dishonesty, fraud, and deceit that adversely reflects on the lawyer's fitness to practice. We agree that the presumptive discipline for his actions is disbarment, but we now turn, as did the special master, to the factors in aggravation and mitigation.

We agree with the special master's conclusions that there are no factors in mitigation and that the following aggravating factors apply to this case: Hardy has a prior disciplinary history, having received a formal letter of admonition in March 2022 for his violation of Rule 9.3, see ABA Standard 9.22 (a); Hardy had a dishonest and selfish motive as demonstrated by his falsehoods, conversion of client funds, and efforts to conceal misconduct from his clients, see ABA Standard 9.22 (b); Hardy engaged in a pattern of misconduct, by neglecting his duties to several clients over an extended period of time, see ABA Standard 9.22 (c); Hardy committed multiple offenses, see ABA Standard 9.22 (d); Hardy has not only refused to acknowledge the wrongful nature of his conduct, but also has

17

consistently failed to express any concern for his former clients or any remorse for his misconduct, see ABA Standard 9.22 (g); the victim in SDBD No. 7623 was a "vulnerable victim" in that she was an incarcerated young mother who was particularly counting on Hardy to follow through on his duties to her, see ABA Standard 9.22 (h); Hardy has shown an indifference to making restitution, see ABA Standard 9.22 (j); and Hardy's conversion of funds out of the bank account of his client in SDBD No. 7623 was patently illegal conduct despite the fact that he has not yet been prosecuted or convicted for any such offense, see ABA Standard 9.22 (k).[16]

After consideration of the record in this matter, we agree with the special master that disbarment is the appropriate sanction for Hardy's admitted violations of the GRPC, and we find this sanction

---

[16] We note that, although the special master also found Hardy's bad faith obstruction of the disciplinary process to be a factor in aggravation, see ABA Standard 9.22 (e), and indeed found his behavior in this regard to be a "significant aggravating factor" since it showed that Hardy "consistently refused to take the grievance, the disciplinary process, and his status as a lawyer seriously," this Court will refrain from recognizing this behavior as a factor in aggravation since Hardy has also been charged with a violation of Rule 9.3 for similar conduct.

consistent with prior cases in which we have disbarred attorneys who failed to perform work, failed to communicate with clients, abandoned or otherwise neglected client matters, and failed to respond to disciplinary authorities. See *In the Matter of Lawrence*, 315 Ga. 723 (884 SE2d 377) (2023); *In the Matter of McCrea*, 314 Ga. 810 (879 SE2d 499) (2022); *In the Matter of Turner*, 311 Ga. 204 (857 SE2d 197) (2021). Accordingly, it is hereby ordered that the name of Keith Chance Hardy be removed from the rolls of persons authorized to practice law in the State of Georgia. Hardy is reminded of his duties pursuant to Bar Rule 4-219 (b).

*Disbarred. All the Justices concur, except Colvin, J., not participating.*